IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUPERIOR PERFORMERS, INC. )
d/b/a NATIONAL AGENTS )
ALLIANCE, )
 )
       Plaintiff, )
 )
v. ) 1:14CV283
 )
FAMILY FIRST LIFE, LLC, and )
SHAWN MEAIKE, )
 )
       Defendants. )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion to Dismiss [Doc. #17] filed by Defendants, Family First Life, LLC ("FFL") and Shawn Meaike ("Meaike"). Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA") has filed a Response in Opposition to the Motion to Dismiss [Doc. #22], to which, Defendants have filed a Reply [Doc. #24]. For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

I.    FACTS AND BACKGROUND

The factual allegations of Plaintiff's Complaint are taken as true for purposes of Defendants' Motion to Dismiss. Plaintiff is an independent marketing organization and a managing general agent to various insurance companies. Plaintiff recruits and trains agents to sell insurance and assists those agents in becoming qualified representatives of the insurance companies for which Plaintiff acts as an independent marketing organization and managing general agent. Meaike was one such agent employed by Plaintiff. As part of his employment,

Meaike was subject to both an Agent Agreement and Management Marketing Agreement with Plaintiff. Meaike's Agent Agreement contained the following provision relating to the termination of his employment with Plaintiff, which required Meaike to:

> i. Immediately deliver to NAA all property and materials including but not limited to all business and technical information under this Section, regardless of whether or not it is confidential or proprietary which pertains to or belongs to NAA ®.
> ii. Immediately cease holding himself or itself out as being affiliated with NAA® in any way, including without limitation, through use of internet websites, internet addresses, e-mail addresses, business cards, use of NAA®'s name, trademarks and logo, and so forth; and
> iii. Immediately transfer to NAA® any URL, domain name or website identification utilizing the intellectual property of NAA®, including without limitation the initials "NAA®."

(Complaint [Doc. #1], at ¶ 12.)

On December 12, 2013, Meaike notified the Plaintiff that he was terminating his employment. Plaintiff asserts that prior to ending his employment with Plaintiff, Meaike formed FFL and actively recruited other agents employed by Plaintiff. FFL is an independent marketing organization that engages in the sale of life insurance. Plaintiff alleges that FFL and Meaike have used the service mark "Family Protection Center" (the "Mark") on their materials to promote the sale of services and insurance products, which is directly competitive with the service and insurance products offered by Plaintiff. Plaintiff, however, asserts that it has used the same Mark since January 1, 2010. Specifically, Plaintiff states that since September 25, 2012, Plaintiff has maintained a website using the Mark. Furthermore, Plaintiff allegedly spent over $260,000.00 in the production and mailing of pamphlets, brochures, and other printed information using the Mark and Plaintiff has also spent approximately $360,000.00 operating a

2

call center associated with the Mark. Plaintiff asserts that it registered the Mark as a trade name in 25 states and has a federal trademark application pending for the Mark. Accordingly, Plaintiff initiated this action, arguing that Defendants' use of the Mark after December 12, 2013, was in violation of Meaike's Agent Agreement, and infringed on Plaintiff's trademark. Furthermore, Plaintiff asserts that Defendants' use also constituted unfair competition and false designation of origin, unfair or deceptive business practices, and unfair competition and business conversion.

Defendants now have filed a Motion to Dismiss Plaintiff's Complaint, in which they argue that Plaintiff failed to adequately plead its claims. Defendants also argues that as to Plaintiff's tort claims specifically, such claims should be dismissed because they are not separate or distinct from Plaintiff's breach of contract claims and, thus, Defendants argue the claims are barred by the economic loss rule. The Court will address each of these arguments below as they relate to the Plaintiff's individual claims.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts " 'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d

868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683, 129 S. Ct. 1937).

III. DISCUSSION

    A.    Breach of Contract Claim

Plaintiff's breach of contract claim alleged that Meaike[1] breached the provisions of his Agent Agreement that prohibited the retention and use of NAA's property by using the Mark. Defendants argue that this claim must be dismissed because the Plaintiff failed to adequately

---

[1] The Court notes that Defendants make an argument in their Motion to Dismiss that Plaintiff's breach of contract claim should be dismissed as to FFL because FFL was not a party to the Agent Agreement. Plaintiff, however, did not assert a breach of contract claim against FFL. Accordingly, the Court need not address this argument.

4

allege the existence of an enforceable contract and also failed to adequately allege any breach of such contract. In response, Plaintiff asserts that Defendants is attempting to impose a heightened pleading standard to its breach of contract claim and under the proper pleading standard, it has adequately plead its claim for breach of contract.

The elements for a breach of contract claim under North Carolina law are "(1) [the] existence of a valid contract and (2) breach of the terms of that contract." Samost v. Duke Univ., 742 S.E.2d 257, 260 (N.C. Ct. App. 2013) (quoting Poor v. Hill, 530 S.E.2d 838, 843 (N.C. 2000)). As to the first element, Defendants assert that Plaintiff did not adequately allege the existence of a valid contract because Plaintiff failed to provide an executed copy of the agreement, provide the date of the agreement, or provide any other information about the agreement to verify or show its existence or validity. First, the Court finds that Defendants' argument that Plaintiff's breach of contract claim is not adequately pled due to Plaintiff's failure to provide a copy of the agreement is without merit. Defendants did not provide any case law supporting the contention that such a failure results in an insufficiently pled breach of contract claim. Furthermore, the Court finds that it is unable to determine the existence of any such legal requirement to state a claim for breach of contract. Second, the Court finds that Defendants' argument regarding the lack of a date and the lack of additional information is also without merit. As stated above, Plaintiff must only state enough factual matter in its Complaint to state a claim that is plausible on its face. See Iqbal, 556 U.S. at 678. In this instance, Plaintiff stated that Meaike was subject to both an Agent and a Management Agreement with Plaintiff as part of his employment with Plaintiff. Plaintiff asserted that the Agent Agreement, which Meaike

was subject to, contained a specific provision pertaining to Plaintiff's property and Meaike's use of such property upon his termination of his employment relationship with Plaintiff. The Court further finds that these allegations sufficiently alleged the plausible existence of a valid contract.

As to the second element of Plaintiff's breach of contract claim, Defendants argue that Plaintiff did not sufficiently allege a breach of contract because Plaintiff failed to state how or when any breach occurred and failed to state what property Meaike allegedly retained and used to constitute a breach of his contract. Initially, the Court notes that Plaintiff is clear about what property Meaike is alleged to have retained or used. In fact, Plaintiff stated throughout its Complaint that Defendants used its Mark, Family Protection Center, in violation of both Meaike's Agent Agreement and in violation of state and federal law. Accordingly, the Court finds that Defendants' argument that Plaintiff failed to allege what property was retained or used by Meaike is without merit. Furthermore, the Court finds that Plaintiff has made sufficient allegations of the breach to state a plausible claim for relief at this stage of the litigation. Plaintiff alleged that Defendants are using the Mark in promoting the sale of services and insurance products. In support of this allegation, Plaintiff attaches what it refers to as examples of the materials on which Defendants have used the Mark. The materials are dated as being from 2014. These allegations are not conclusory, but instead provide an explanation and example of how Defendants are allegedly using the Mark and how Meaike is breaching his agreement with Plaintiff. Accordingly, the Court finds that Plaintiff sufficiently alleged the second element of its breach of contract claim. Thus, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's breach of contract claim.

B.   Lanham Act Claim

Plaintiff's second claim for relief, is a claim against both Defendants for unfair competition and false designation of origin brought pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2]  Defendants argue this claim must be dismissed because Plaintiff failed to allege any wrongful conduct by Defendants that would constitute unauthorized use in commerce of the Mark.  Plaintiff in response, again argues that Defendants are attempting to impose a heightened pleading standard and pursuant to the proper pleading standard, it has sufficiently alleged its claim under the Lanham Act.

"Section 43(a) creates a federal remedy against unfair competition in the form of a false designation of origin." Devan Designs, Inc. v. Palliser Furniture Corp., No. 2:91CV00512, 1992 WL 511694, *4 (M.D.N.C. Sept. 15, 1992).  To state a false designation of origin claim, a plaintiff must sufficiently allege that:

> (1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts.

America Online, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444, 449 (E.D. Va. 1998) (citing First

---

[2]The Court notes that Plaintiff's claim is specifically entitled as an unfair competition and false designation of origin claim pursuant to Section 43(a) of the Lanham Act.  The Complaint also lists the specific statute that Plaintiff is bringing its false designation of origin claim under, which is 15 U.S.C. § 1125(a). Within this claim, however, Plaintiff alleges that Defendants have infringed on Plaintiff's Mark.  Furthermore, in its response to Defendants' Motion to Dismiss, Plaintiff cites case law concerning unfair competition and trademark infringement under the Lanham Act, rather than false designation of origin. (See Resp. to Mot. to Dismiss [Doc. #22], at 5.)  The Court, however, will analyze this claim as a false designation of origin claim, as that is how the claim it titled and presented in the Complaint.

Keystone Federal Savings Bank v. First Keystone Mortgage, Inc., 923 F. Supp. 693, 707 (E.D. Pa. 1996)).[3]

Defendants appear to be arguing that Plaintiff has failed to plead these elements of a false designation claim. After reviewing Plaintiff's Complaint, however, the Court finds that Plaintiff has sufficiently stated these elements. Specifically, as to Defendants' use of the designation, Plaintiff asserted that Defendants used the Mark through distribution, advertising, offering for sale and sale of its products and services, and in other communications. In support of this allegation, Plaintiff attached an example of a postcard allegedly used by Defendants that contained the Mark. The postcards appear to have been sent to the states of New Jersey and California. Defendants are alleged to be located in Connecticut. Accordingly, the Court finds that the attachment of the postcards and allegations made in the Complaint sufficiently alleged that Defendants used the Mark in interstate commerce, via the mail system. Furthermore, the postcards used the Mark in connection with Defendants alleged sale of life insurance, which satisfies the third element. The fourth element, concerning the likelihood that the use will cause confusion is discussed in more detail below. However, it is enough to say for purposes of Defendants' argument concerning this claim, that Plaintiff has sufficiently stated this element

---

[3] The statute itself states in relevant part:
Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a).

8

based on Plaintiff's allegation that Defendants have used a name identical to Plaintiff's Mark in their advertising and promotions. The Court notes again that Plaintiff attached to the Complaint an example of such use.

As to the fifth element concerning damages, the Plaintiff has stated that upon its information and belief, Defendants have profited at the expense of injury to Plaintiff. Again, at this stage of the litigation, the Court finds that this allegation in conjunction with the allegations concerning the likelihood of confusion is sufficient to assert the fifth element concerning damages. Accordingly, the Court will deny Defendants' Motion to Dismiss based on their argument that Plaintiff failed to allege the elements of its Lanham Act claim.

C. Trademark Infringement

Plaintiff's third claim is a claim for trademark infringement pursuant to North Carolina common law. Defendants argue that this claim must be dismissed for two reasons. First, Defendants argue that the claim must be dismissed because Plaintiff failed to identify any use of the Mark by Defendants that would lead to or cause any actual confusion. As to this argument, the Plaintiff asserts that it sufficiently pled its Complaint. Second, Defendants argue that any trademark claim, whether brought under North Carolina law or federal law, must be dismissed because Plaintiff failed to allege that its use of the Mark began prior to Defendants' first use of the Mark. Plaintiff, in response, argues that Defendants have misinterpreted the case law, and in the alternative, Plaintiff argues that the assertions in its Complaint are sufficient to allege that it used the Mark prior to Defendants' infringing use.

Defendants first argument concerns Plaintiff's alleged failure to plead actual confusion

based on Defendants' use of the Mark. 'Likelihood of confusion' is the basic test of both common-law trademark infringement and federal statutory trademark infringement. Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 422 (4th Cir. 1998) (internal quotations and citations omitted). The inquiry concerning the likelihood of confusion is a fact-intensive inquiry. U.S. Hosiery Corp. v. The Gap, Inc., 707 F. Supp. 800, 810 (W.D.N.C. 1989). Various factors are considered, including the following:

> (1) the strength or distinctiveness of the mark sought to be protected by the plaintiff;
> (2) the similarity between the mark of plaintiff and the alleged infringing mark;
> (3) the similarity of the goods or services identified by the two marks;
> (4) the similarity of the facilities or marketing channels used in the two businesses;
> (5) the similarity of the purchasers or the customers of the two businesses;
> (6) evidence of actual confusion;
> (7) the intent of the alleged infringer.

Id. (citations omitted). While it is not appropriate to weigh such factors at the motion to dismiss stage, the Court notes such factors so as to illustrate that actual confusion is only one factor to be taken into account in the likelihood of confusion inquiry. Accordingly, Plaintiff's failure to plead that a person was actually confused by Defendants' alleged use of the Mark is not fatal to Plaintiff's Complaint. Plaintiff asserted that Defendants are using a name on its advertising and promotions that is identical to the Plaintiff's Mark. Plaintiff has also attached an example of such use as an exhibit to the Complaint. Plaintiff's allegation and specific example of such infringement provide a sufficient basis at this stage to assert a claim that others may likely be confused by Defendants' use of the Mark.

Defendants next argue that the claim must be dismissed because Plaintiff has failed to

allege that it is the senior user of the Mark. In attempting to limit the applicability of the case law cited by Defendants, Plaintiff argues that such case law only applies to the question of whether the incorporation of a business is enough to establish a trademark. However, contrary to Plaintiff's assertion, the North Carolina Supreme Court has indicated that a party asserting trademark infringement, must allege that it used the trademark prior to the infringing party's use. Blackwell's Durham Tobacco Co. v. American Tobacco Co., 59 S.E. 123, 128 (N.C. 1907); see also SCI North Carolina Funeral Services, LLC v. McEwen Ellington Funeral Services, No. 13 CVS 558, 2013 WL 615509, at *7 (N.C. Sup. Ct. Feb. 18, 2013) ("Because plaintiff failed to say when the use began it could not demonstrate that it was the senior user, and therefore had a protectable trademark."). While Blackwell's Durham does discuss incorporation in relation to ownership of a trademark, the court also expanded on such discussion by explaining what is required to assert a property right to a trademark. Specifically, the court stated that "[t]he property right in the name of a corporation, as in a trade–mark, is acquired not simply by adoption, but by using it." Blackwell's Durham, 59 S.E. at 126. The court found that the plaintiff failed to allege in its complaint that its use of the corporation's name occurred prior to the defendant's use of the name. Id. As a result, the court found that plaintiff's complaint was deficient and injunctive relief could not be granted. Id. at 128 ("In the absence of any allegation that plaintiff has used its corporate name, or exercised its corporate powers in the manufacture, purchase, or sale of smoking tobacco at Durham, or elsewhere, we find no ground upon which it may successfully invoke the power of a court of equity to prevent defendant from continuing to do so."). Thus, while the court found that incorporation was not itself sufficient for purposes

of establishing a property right in a trademark, the court explained what was required to establish a property right in a trademark, that being the need to allege the use of such mark. Furthermore, in analyzing a common law trademark infringement claim arising under North Carolina law, the Fourth Circuit has also stated that "[a]t common law, trademark ownership is acquired by actual use of the mark in a given market" and " 'the party claiming ownership must have been the first to actually use the mark.' " Emergency One, Inc. v. American Fire Eagle Engine Co., Inc., 332 F.3d 264, 268 (4th Cir. 2003) (citations omitted). Accordingly, it is clear that a plaintiff is required to allege and eventually prove that it is the first user of the mark in which it alleges it has ownership.

Notwithstanding Defendants' assertion that Plaintiff failed to allege that its use of the Mark occurred prior to Defendants' alleged infringing use, the Court finds that Plaintiff did sufficiently allege in its Complaint that Defendants' use of the Mark was subsequent to Plaintiff's use. In particular, Plaintiff asserted that it began using the Mark as early as January 1, 2010. Plaintiff alleged that Meaike did not notify Plaintiff that he was terminating his employment relationship until December 12, 2013. Prior to the end of the parties' employment relationship, Plaintiff stated that Meaike created FFL. Plaintiff asserted that the Defendants together have used Plaintiff's Mark. Furthermore, Plaintiff alleged that it used the Mark in connection with identifying itself and its services prior to the time Defendants used the Mark. While these allegations do not provide the specific date on which Defendants started using the Mark, the Plaintiff did allege that Defendants' use of the Mark was subsequent to its own use. Additionally, it is reasonable to infer that Meaike did not create FFL until sometime after

12

January 1, 2010, as Meaike did not terminate his employment relationship with Plaintiff until December 12, 2013. Accordingly, while Plaintiff could have provided more specific allegations concerning Defendants' alleged use, the Court finds that the allegations that were provided in Plaintiff's Complaint are sufficient to state a plausible claim for relief. Therefore, Defendants' Motion to Dismiss Plaintiff's common law trademark infringement claim based on Plaintiff's alleged failure to plead that it is the senior user of the Mark, will be denied.

D. Unfair or Deceptive Business Practices

Plaintiff's fourth claim is one for unfair or deceptive business practices. Defendants assert that such claim should be dismissed because Plaintiff has not pled sufficient allegations to support its claim. Defendants also argue that Plaintiff's claim for unfair or deceptive business practices should be dismissed because the claim is not separate and distinct from Plaintiff's breach of contract claim. In response, Plaintiff asserts that its Complaint is pled with sufficient detail to withstand Defendants' Motion to Dismiss and its claim for unfair or deceptive trade practices is separate and distinct from its breach of contract claim. Furthermore, specifically as to Defendant FFL, Plaintiff argues that it has not brought a breach of contract claim against FFL, and therefore, its torts claims against FFL cannot be dismissed on the basis that it is not separate and distinct from the breach of contract claim against Meaike.

A claim for unfair and deceptive trade practices may be brought pursuant to North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.* This statute prohibits the use of unfair and deceptive trade practices in commerce and authorizes a private cause of action for a plaintiff who can demonstrate (1) an unfair or

13

deceptive act or practice or unfair method of competition, (2) in or affecting commerce, which (3) proximately caused actual injury to the plaintiff. Spartan Leasing Inc. v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) (discussing North Carolina's unfair trade practices statute). Accordingly, the elements are practically identical to those required to state a claim under the Lanham Act outlined above. See Microsoft Corp. v. Computer Service & Repair, Inc., 312 F. Supp. 2d 779, 785 (4th Cir. 2004) (finding that the facts supporting a plaintiff's federal claims, including one brought for false designation of origin pursuant to the Lanham Act, also supported a plaintiff's unfair and deceptive trade practices claim). Thus, to the extent that the Court found above that Plaintiff has sufficiently stated its claim pursuant to the Lanham Act, it need not reiterate such findings, but instead the Court finds for the same reasons as stated above, that Plaintiff has sufficiently stated a claim pursuant to the North Carolina UDTPA.

As to Defendants assertion that Plaintiff cannot assert its UDTPA claims against Defendants because they are not separate and distinct from Plaintiff's breach of contract claim, Defendants are correct in stating that a "mere breach of contract, even if intentional," is not sufficient to sustain a claim under the UDTPA. Broussard, 155 F.3d at 347. North Carolina courts " 'differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law.' " Id. (quoting Hageman v. Twin City Chrysler–Plymouth Inc., 681 F. Supp. 303, 306-07 (M.D.N.C. 1988)). A showing of

14

substantial aggravating circumstances, "such as an intentional misrepresentation made for the purpose of deceiving another and which has the natural tendency to injure another[,]" is required to sustain a UDTPA claim that is based on the same conduct that is used to establish a breach of contract claim. Baldine v. Furniture Comfort Corp., 956 F. Supp. 580, 587 (M.D.N.C. 1996).

In this instance, however, Plaintiff has sufficiently alleged such aggravating circumstances exist, in that they form the basis of Plaintiff's claims for false designation of origin and common law trademark infringement. Both of these claims require a showing that it was likely that others were confused or deceived by Defendants' use of the name, which is alleged to be identical to Plaintiff's Mark. Furthermore, Plaintiff alleges in its Complaint that Defendants undertook such acts of infringement and false designation deliberately and with the knowledge that the name would be confused with Plaintiff's Mark. Such allegations are sufficient to state a claim for more than a mere breach of contract. As stated above, the allegations are sufficient to state a claim for common law trademark infringement and false designation of origin under the Lanham Act. Thus, the Court finds that Plaintiff's UDTPA claim is separate and distinct from Plaintiff's breach of contract claim, as it is based on the conduct raised by Plaintiff's claims of false designation of origin and common law trademark. Thus, such claim is not based only on Defendants' conduct in relation to Plaintiff's breach of contract claim. Cf. X-IT Products, LLC v. Walter Kidde Portable Equipment, Inc., 155 F. Supp. 2d 577, 650-51 (E.D. Va. 2001) (finding that a plaintiff's claims, which included a claim for trade dress infringement, provided the necessary factual bases for the plaintiff's North Carolina UDTPA claim, but the plaintiff's breach of contract claim did not). Accordingly, the Court finds that Plaintiff's UDTPA claim

against Defendants is based on more than Meaike's alleged breach of contract and Plaintiff has sufficiently stated aggravating circumstances to support its UDTPA claim against Defendants. As such, Defendants' Motion to Dismiss such claim, will be denied.

> E. Unfair Competition and Business Conversion

The Plaintiff's last claim in its Complaint is entitled "Unfair Competition / Business Conversion." Accordingly, it is unclear whether Plaintiff is asserting an unfair competition claim, a business conversion claim, or a separate claim for each. As a result, the Court will address the claims separately. Defendants assert that this claim in its entirety must be dismissed because Plaintiff has not sufficiently pled any facts that could support the claim. Furthermore, Defendants also allege that such claim is not separate and distinct from Plaintiff's breach of contract claim and that, as a result, such claim must be dismissed. Plaintiff, in response, argues that it has sufficiently pled the claim, and such claim is separate and distinct from its breach of contract claim.

"The tort of common law unfair competition is recognized in North Carolina 'as an offense committed in the context of competition between business rivals.' " Pan-American Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 697 (M.D.N.C. 2011) (quoting Henderson v. U.S. Fidelity & Guar. Co., 488 S.E.2d 234, 239-40 (1997) ("The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money.")). Trademark infringement law, which Plaintiff alleges was violated in a separate claim in its Complaint, "is a part of the broader law of unfair competition." Moseley v. Secret Catalogue, Inc., 537 U.S. 418,

16

428, 123 S. Ct. 1115, 1122, 155 L. Ed. 2d 1 (2003). Both actions for unfair competition and common law trademark infringement "hinge upon the likelihood of confusion." U.S. Hosiery Corp., 707 F. Supp. at 810. Furthermore, both are "actionable when they damage a plaintiff's legitimate business." Polo Fashions, 816 F.3d at 148. This can occur "when a rival adopts for his own goods a sign or symbol in an apparent imitation of another's that would likely mislead prospective purchasers and the public as to the identity of the goods." Id.

Plaintiff, as stated above, has sufficiently pled that consumers would likely be confused or deceived by Defendants' use of a name that is identical to Plaintiff's Mark. Furthermore, as the Court stated above in relation to Plaintiff's false designation of origin claim, Plaintiff has adequately pled the damages element based on the allegations concerning the likelihood of confusion. Accordingly, the Court finds that insomuch as Plaintiff is attempting to assert a claim for unfair competition, such claim will not be dismissed for a failure to sufficiently plead such claim. Furthermore, as to Defendants' argument that Plaintiff's unfair competition claim is not separate and distinct from its breach of contract claim, the Court finds that such argument is without merit. As with Plaintiff's claim brought under the UDTPA, Plaintiff's unfair competition claim is based not only on Meaike's conduct in relation to the alleged breach of contract, but such claim is also based on Defendants' conduct in relation to Plaintiff's claims for false designation of origin and common law trademark infringement. Accordingly, as with Plaintiff's UDTPA claim, Plaintiff's unfair competition claim is separate and distinct from its breach of contract claim. As such, the Defendants' Motion to Dismiss will be denied as to Plaintiff's claim of unfair competition.

As to Plaintiff's claim for business conversion, this tort is defined in North Carolina as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition to the exclusion of an owner's rights." State ex rel. Pilard v. Berninger, 571 S.E.2d 836, 844 (N.C. Ct. App. 2002) (internal quotations omitted). "In North Carolina, only goods and personal property are properly the subjects of a claim for conversion." Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 264 (N.C. Ct. App. 2000). Intangible interests, such as business opportunities and expectancy interests, are not subject to a conversion claim. Id.

The Court therefore finds that Plaintiff has failed to properly plead a claim for business conversion because, as stated above, only tangible goods are subject to a claim of conversion. As to Plaintiff's claim for business conversion, Plaintiff alleged in its Complaint that Defendants' conduct, in the use of the Mark, "is unethical and designed to misappropriate NAA's commercial competitive advantage obtained through years of time, money and labor." (Compl. [Doc. #1], at ¶59.) Plaintiff at no time alleged in its Complaint that the object of its conversion claim is the Mark itself, but instead Plaintiff appears to only state that NAA misappropriated the intangible object of commercial and competitive advantage. Accordingly, the Court finds that Plaintiff's claim for business conversion will be dismissed based on Plaintiff's failure to plead that Defendants converted a tangible good.

IV. CONCLUSION

In sum, for the reasons stated above, the Court will grant in part and deny in part Defendants' Motion to Dismiss [Doc. #17].

18

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART as to Plaintiff's claim for business conversion and DENIED IN PART as to Plaintiff's claims for breach of contract, false designation of origin under the Lanham Act, common law trademark infringement, unfair and deceptive trade practices under North Carolina's UDTPA, and common law unfair competition.

This, the 22nd day of December, 2014.

_____
United States District Judge