IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SUPERIOR PERFORMERS, INC. d/b/a NATIONAL AGENTS ALLIANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:14CV283 |
| FAMILY FIRST LIFE, LLC, and SHAWN L. MEAIKE, | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on the Motion for Preliminary Injunction [Doc. #33] filed by Plaintiff Superior Performers, Inc. ("Plaintiff" or "NAA"), in which Plaintiff seeks to have the Court enjoin Defendants Family First Life, LLC and Shawn Meaike (collectively "Defendants") from using Plaintiff's NAA service mark. Defendants filed a Response in Opposition to the Motion [Doc. #41], to which, the Plaintiff filed a Reply [Doc. #53]. For the reasons discussed below, the Court will deny Plaintiff's Motion for Preliminary Injunction.

I.  BACKGROUND

Plaintiff is an independent marketing organization and a managing general agent to various insurance companies. Plaintiff recruits and trains agents to sell insurance and assists those agents in becoming qualified representatives of the insurance companies for which Plaintiff acts as an independent marketing organization and managing general agent. Meaike was

one such agent employed by Plaintiff. As part of his employment, Meaike was subject to both an Agent Agreement and Management Marketing Agreement with Plaintiff. Meaike's Agent Agreement contained the following provision relating to the termination of his employment with Plaintiff, which required Meaike to:

> i. Immediately deliver to NAA all property and materials including but not limited to all business and technical information under this Section, regardless of whether or not it is confidential or proprietary which pertains to or belongs to NAA®.
> ii. Immediately cease holding himself or itself out as being affiliated with NAA® in any way, including without limitation, through use of internet websites, internet addresses, e-mail addresses, business cards, use of NAA®'s name, trademarks and logo, and so forth; and
> iii. Immediately transfer to NAA® any URL, domain name or website identification utilizing the intellectual property of NAA®, including without limitation the initials "NAA®."

(Amend. Compl. [Doc. #45], at ¶ 13.)

On December 12, 2013, Meaike notified the Plaintiff that he was terminating his employment. Plaintiff asserts that prior to Meaike ending his employment with Plaintiff, Meaike formed FFL and actively recruited other agents employed by Plaintiff to join FFL. FFL is an independent marketing organization that engages in the sale of life insurance. Plaintiff's Amended Complaint alleges that since Meaike left his employment with Plaintiff and formed FFL, the Defendants have used certain marks belonging to Plaintiff in infringing ways. Specifically, Plaintiff alleges that Defendants used the Plaintiff's service marks "Family Protection Center" (hereinafter "FPC Mark") and "Mortgage Protection Center" (hereinafter "MPC Mark") on and in their materials to promote the sale of services and insurance products.

2

Additionally, Plaintiff alleges that Defendants have also used Plaintiff's NAA service mark[1] (hereinafter "NAA Mark") in the source code of the Defendants' website in order to divert consumers searching for NAA from Plaintiff's websites to Defendants' website.[2] Based on this alleged infringing conduct, Plaintiff asserts claims for breach of contract, trademark infringement pursuant to the Lanham Act, unfair competition and false designation of origin pursuant to the Lanham Act, common law infringement, unfair or deceptive business practices, and common law unfair competition.

Plaintiff has now filed a Motion for Preliminary Injunction, in which it seeks to have the Court enjoin Defendants from using the NAA Mark in any context, including within the Defendants' website's source code. Additionally, Plaintiff requests that the Court also require Defendants to post the following message on its website:

> If the search that directed you to this site included the term "NAA," you should not have been directed here as there is no affiliation between FFL and that term. The mark "NAA" is a trademark of a different insurance marketing organization, National Agents Alliance, which can be found at www.naaleads.com.

(Mem. in Support of Motion for Prelim. Inj. [Doc. #37], at 2.) The Court notes that Plaintiff

---

[1] Plaintiff also alleges infringement of its composite mark. A composite mark is a single mark that incorporates "otherwise separable words, phrases and/or designs[.]" In re Save Venice New York, Inc., 259 F.3d 1346, 1349 n.1 (Fed. Cir. 2001). The composite mark referenced by Plaintiff is a mark that contains a design resembling the flag of the United States, the words "National Agents Alliance," and the abbreviation "NAA." While, Plaintiff alleges that Defendants infringed on this composite mark, it is unclear from the Amended Complaint, in what way Defendants infringed on such mark. Furthermore, in its Motion for Preliminary Injunction briefing, Plaintiff only refers to the Defendants' use of the NAA service mark and not the composite mark. Accordingly, for purposes of the Memorandum Opinion and Order, the term "NAA Mark" refers only to the NAA service mark.

[2] Plaintiff's original Complaint in this action only asserted claims based on Defendants' alleged infringing conduct concerning the FPC Mark.

is not seeking a preliminary injunction in relation to Defendants' alleged use of the FPC Mark or the MPC Mark. For the reasons more fully stated below, this Court will deny Plaintiff's Motion for Preliminary Injunction.

II.   DISCUSSION

As stated above, Plaintiff asserts that Defendants have used the NAA Mark in the source code[3] for Defendants' website. Specifically, Plaintiff asserts that the Defendants inserted the term "NAA Resources" in its source code as an "alt tag." Plaintiff alleges that "alt tags" are a particular type of source code that search engines look for when compiling websites in response to an Internet search. As a result of "NAA Resources" being embedded as an "alt tag" on Defendants' website, Plaintiff asserts that Defendants' website was being listed in response to searches for NAA's products and services and in response to searches from persons interested in getting started in the life insurance business.[4] Plaintiff asserts that this is a violation of Plaintiff's rights in its NAA Mark, and it seeks a preliminary injunction from this Court to prevent Defendants from continuing to use the NAA Mark in any context, including within the Defendants' website's source code. Additionally, Plaintiff seeks to have the Court require Defendants to insert the statement, set out above, on Defendants' website indicating that if a

---

[3]Source code is embedded in a website to help identify the subject matter of the website, but the code does not appear to the user when conducting an Internet search via a search engine.

[4]The Court notes that Defendants contend, and Plaintiff in its reply does not contest, that Defendants have removed the complained of "alt tag." Defendants, however, do not argue that the removal moots Plaintiff's Motion for Preliminary Injunction. Additionally, Defendants maintain that while they removed the "alt tag," it would not be improper for Defendants to use such tag if they chose to do so. Accordingly, the Court will not address any possible implications caused by the removal of the "alt tag" from Defendants' website.

4

search including NAA directed the website user to Defendants' website, it was by error.

Injunctive relief, however, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948, at 129–30 (2d ed. 1995)). Issuing a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974). In order to obtain a preliminary injunction, a movant *must* establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365 (2008). If a party cannot establish one of these factors, the Court cannot grant a preliminary injunction to the movant. See Dewhurst v. Century Aluminum Co., 649 F.3d 287, 293 (affirming a district court's denial of a preliminary injunction after finding that the plaintiff was unlikely to succeed on the merits of its underlying claim).

In order to establish that Defendants infringed on Plaintiff's NAA Mark and thus establish that Plaintiff is likely to succeed on the merits of its claim, Plaintiff must show that: (1) Plaintiff owns a valid and protectable mark; (2) that Defendants used a "re-production, counterfeit, copy or colorable imitation" of the mark in commerce and without Plaintiff's consent; and (3) that Defendants' use is likely to cause confusion. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007) (quoting 15 U.S.C. § 1114(1)(a)).

Plaintiff must show a likelihood of success as to each of these three elements to obtain a preliminary injunction. Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd., 799 F. Supp. 2d 558, 568 (M.D.N.C. 2011) (citing Lorillard Tobacco Co. v. S & M Brands, Inc., 616 F. Supp. 2d 581, 590 (E.D. Va. 2009)).

Whether or not a mark is protectable is related to the mark's distinctiveness. U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002). A mark receives more protection, the more distinctive it is found to be. OBX-Stock, Inc. v. Bicast, Inc., 558 F.3d 334, 340 (4th Cir. 2009). "To ascertain whether a mark is protected, [the Court] must determine whether it is 1) generic, 2) descriptive, 3) suggestive or 4) arbitrary or fanciful." U.S. Search, 300 F.3d at 523 (citations omitted). Plaintiff first argues that the NAA Mark is a fanciful mark. "Fanciful marks are, in essence, made-up words expressly coined for serving as a trademark." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996) (citing 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 11.01 (3d ed. 1995)). The Fourth Circuit has used the term "nonsense" to describe the type of words found to be fanciful. Retail Servs., Inc. v. Freebies Publishing, 364 F.3d 535, 539 (4th Cir. 2004). Examples of such marks include, Clorox®, Kodak®, Polaroid®, and Exxon®.[5] Sara Lee, 81 F.3d at 464. Fanciful marks are

---

[5]Plaintiff, in its Reply in support of its Motion for Preliminary Injunction [Doc. #53], asserts that the following abbreviations that serve as trademarks are also fanciful: CVS; IBM; BP; and NRA. Accordingly, Plaintiff asserts that its NAA Mark may also be considered fanciful. Plaintiff, however, provides no supporting law for the assertion that any of the cited marks constitute fanciful marks, and the Court declines to make a determination as to the classification of such marks. The Court notes, however, that the Fourth Circuit's precedent appears to disfavor finding such abbreviations as something other than descriptive. See George & Co. LLC v. Imagination Entertainment Ltd., 575 383, 394–95 (4th Cir. 2009) (expressing doubts concerning the United States Patent and Trademark Office's determination that the abbreviation

considered inherently distinctive and do not require any other showing to establish their validity. OBX-Stock, Inc., 558 F.3d at 340.

Plaintiff argues that because NAA "has no meaning besides a company that connects consumers with valuable insurance products[,]" NAA is similar to the Clorox®, Kodak®, Polaroid®, and Exxon® marks. (Mem. in Support of Motion for Prelim. Inj. [Doc. #37], at 9–10.) The Court finds that it is unlikely that such argument could succeed on the merits. NAA certainly has a meaning that was not expressly coined for serving as a trademark and the abbreviation[6] is not nonsensical. Instead, it is an abbreviation of the Plaintiff's company's name, National Agents Alliance, which is a combination of three words that clearly existed prior to Plaintiff's use in its company's name. In contrast, words like Colorox® had absolutely no meaning prior to the owner of the trademark coining such word or term. Accordingly, NAA is not a made-up nonsensical name, expressly coined for serving as a trademark, like the examples provided by the Fourth Circuit in Sara Lee, and as such the mark likely cannot be considered fanciful.

Plaintiff asserts that if the Court does not find that the NAA Mark is a fanciful mark, the Court should, nevertheless, find that the NAA Mark could be classified as a descriptive mark. Marks classified as descriptive are those that "describe a function, use, characteristic, size, or

---

"LCR" for "Left Center Right" qualified as a suggestive mark, rather than a descriptive mark).

[6]Plaintiff refers to the NAA Mark as an acronym. Such mark, however, is better described as an abbreviation, as an acronym refers to a specific type of abbreviation that can be pronounced as a word, rather than as letters. See Welding Services, Inc. v. Forman, 509 F.3d 1351, 1355 n.1 (11th Cir. 2007) (citing 3 Louis Altman, Callmann on Unfair Competition, Trademarks and Monopolies § 18:12 n. 27 (4th ed. 2004)).

7

intended purpose of the product." Sara Lee, 81 F.3d at 464. "Initials for a descriptive phrase merely represent short forms of the words for which they stand and should receive the same degree of protection as those words." U.S. Conference of Catholic Bishops v. Media Research Center, 432 F. Supp 2d 616, 624 (E.D. Va. 2006). Unlike fanciful marks, descriptive marks are not inherently distinctive and are only protected if the marks have acquired a "secondary meaning." Sara Lee, 81 F.3d at 464. "Saying that a trademark has acquired 'secondary meaning' is shorthand for saying that a descriptive mark has become sufficiently distinctive to establish 'a mental association in buyers' minds between the alleged mark and a single source of the product.' " Retail Servs., 364 F.3d at 539 (quoting 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:5 (3d ed. 1995)) (citations omitted). "If a trade name has not acquired secondary meaning, the purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark." Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125 (4th Cir. 1990).

"Proof of secondary meaning entails a rigorous evidentiary standard." U.S. Search, 300 F.3d at 525 (citing Perini Corp., 915 F.2d at 125). The party seeking to establish secondary meaning has the burden of proving such meaning. Id. In determining whether a mark has secondary meaning, the Fourth Circuit found the following factors relevant to the determination: "1) advertising expenditures, 2) consumer studies linking the mark to a source, 3) sales success, 4) unsolicited media coverage of the product, 5) attempts to plagiarize the mark, and 6) the length and exclusivity of the mark's use." Id. (citations omitted). No single factor is considered determinative for purposes of establishing secondary meaning. Id. Survey evidence, however,

8

is considered "the most direct and persuasive way of establishing secondary meaning." Id., at 526 n. 13; see also U.S. Conference of Catholic Bishops, 432 F. Supp 2d at 624.

In support of Plaintiff's argument that the NAA Mark has secondary meaning, the Plaintiff cites its use of the NAA Mark since 2002 and its extensive advertising efforts that included mailings, phone calls, and a large Internet presence since that time. This information, however, only covers the sixth factor relative to the secondary meaning determination relating to the length and exclusivity of the mark's use. Even then, such evidence does not speak to the exclusivity of the NAA Mark, rather such evidence only speaks to the length of time that Plaintiff has used the NAA Mark.

As to the other remaining five factors, Plaintiff has wholly failed to provide any evidence in support of secondary meaning. While Plaintiff alleges that it has advertised across various platforms, Plaintiff has failed to provide any information regarding the expenditures associated with the NAA Mark. Furthermore, Plaintiff has not produced a consumer study linking the NAA Mark to the sale of insurance or shown any attempts by others to infringe on the NAA Mark. As to unsolicited media coverage, Plaintiff appears to assert that a press release referring to National Agents Alliance as NAA, which was released by Plaintiff itself, constitutes media coverage. It is unclear, however, how a press release that was released by Plaintiff itself, constitutes "unsolicited" media coverage. Regarding the sales success factor, Plaintiff does contend that it has agents associated with NAA across the United States, but fails to give any information concerning the sales success related to NAA.

Accordingly, the Court finds that at this time, with the lack of evidence concerning the

factors relative to secondary meaning, it is unlikely that Plaintiff will succeed in establishing secondary meaning. See U.S. Search, 300 F.3d at 526 n.12 (finding that evidence concerning the length of time a party used a mark alone is insufficient to establish secondary meaning). As such, it is unlikely, based on the evidence presented at this time, that Plaintiff will be successful on the merits of its infringement claim, as Plaintiff cannot currently establish the first element of the infringement claim without establishing secondary meaning. See id. (stating that because the district court found that the plaintiff's mark had not acquired secondary meaning, the district court was not required to examine the remaining element of the plaintiff's infringement claim). The Court therefore finds it unnecessary to consider and analyze the remaining elements in establishing an infringement claim.

As stated above, in order to grant a preliminary injunction, Plaintiff must establish all four factors set out in Winter, including that Plaintiff will likely succeed on the merits. Because Plaintiff has failed to show that it will likely succeed on the merits of its infringement claim concerning Plaintiff's NAA Mark, the Court will deny Plaintiff's Motion for Preliminary Injunction.

III. CONCLUSION

In sum, because Plaintiff has failed to establish a likelihood of success on the merits, the Court denies Plaintiff's Motion for Preliminary Injunction seeking to enjoin Defendants from using Plaintiff's NAA service mark.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Preliminary Injunction [Doc. #33] is hereby DENIED.

This the 9th day of July, 2015.

/s/ James A. Beaty
United States District Judge